Filed 5/7/20 Certified for Publication 6/5/20 (order attached)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| In re M.W., a Person Coming Under the Juvenile Court Law. | C089997 |
| SACRAMENTO COUNTY DEPARTMENT OF CHILD, FAMILY, AND ADULT SERVICES, Plaintiff and Respondent, v. A.C., Defendant and Appellant. | (Super. Ct. No. JD239507) |

A.C., father of the minor, appeals from the juvenile court's order terminating his parental rights. (Welf. & Inst. Code, §§ 366.26, 395.)[1] He contends the juvenile court and the Sacramento County Department of Child, Family, and Adult Services

---

[1] Undesignated statutory references are to the Welfare and Institutions Code.

1

(Department) failed to comply with the requirements of the Indian Child Welfare Act (ICWA) (25 U.S.C. § 1901 et seq.). We will affirm the juvenile court's orders.

## I. BACKGROUND

Because the sole issue on appeal is ICWA compliance, a detailed recitation of the non-ICWA related facts and procedural history is unnecessary to our resolution of this appeal.

### *Proceedings Prior to Father's Appearance*

On December 4, 2018, the Department filed a dependency petition on behalf of the newborn minor pursuant to section 300, subdivisions (b) and (j). The petition alleged the minor suffered, or was at substantial risk of suffering, harm due to substance abuse by mother and alleged father M.W. The petition further alleged substantial risk to the minor due to the abuse or neglect of, and eventual termination of mother's parental rights over, the minor's three half-siblings.

On November 30, 2018, mother and M.W. reported they believed M.W. was the minor's biological father but requested a paternity test for confirmation. Mother also reported the maternal grandfather had Native American heritage with the Apache Tribe, later confirming her claim in her parental notification of Indian status form (ICWA-020). M.W. denied having any Indian ancestry.

At the December 5, 2018, detention hearing, the juvenile court made ICWA orders as to mother and ordered the minor detained.[2]

On December 12, 2018, the Department interviewed mother in custody and learned A.C. (father) could potentially be the minor's biological father. Mother was unable to provide father's contact information, but stated he was active on social media

---

[2] Father does not challenge ICWA compliance or the court's ICWA findings as to mother. ICWA-related facts and procedure as to mother are mentioned only to provide context or where relevant to father's issue on appeal.

and promised to provide the Department with his personal information upon her release from custody. Several weeks later, the Department informed mother M.W. was excluded from the paternity results and asked for father's identifying information. Mother eventually provided father's telephone number, which the Department used to attempt to contact father without success.

On December 24, 2018, the Department filed a declaration regarding its ICWA investigation as to mother, including that notices were sent to the Bureau of Indian Affairs (BIA), the Secretary of the Interior, and numerous Apache Tribes, and that the notices contained information gleaned from mother's previous dependency cases involving the minor's half-siblings regarding mother and the maternal relatives. The declaration also noted previous findings by the juvenile court that the ICWA did not apply as to each of the minor's three half-siblings.

The January 9, 2019, jurisdiction/disposition report recommended that the court sustain the allegations in the petition and bypass mother and M.W. for reunification services.

No parent was present for the January 9, 2019 jurisdiction/disposition hearing. The court ordered the Department to continue its search for father and, upon locating him, inform him of the proceedings and his options for establishing paternity, and to make ICWA inquiry. At the parties' request, the court continued the matter to complete ICWA noticing.

From January 16, 2019, to March 12, 2019, the Department was unable to locate father.

On February 4, 2019, the Department reported that five tribes confirmed the minor was not eligible for enrollment and three tribes had yet to respond. The Department subsequently reported it was still awaiting responses from the three remaining tribes.

At the February 13, 2019 continued jurisdiction/disposition hearing, the court sustained the allegations in the amended petition, bypassed mother for services,

3

scheduled an ICWA compliance hearing in March 2019, and scheduled a section 366.26 hearing in June 2019.

On March 13, 2019, the Department reported it finally made telephonic contact with father.

The Department reported that, as of March 26, 2019, it received confirmation from all but one of the tribes that the minor was not enrolled or eligible for enrollment.

***Proceedings After Father's Appearance***

Father appeared in court on March 27, 2019, and requested paternity testing to determine whether the minor was his biological child. The court authorized a paternity test and set the matter for a paternity hearing.

The April 2019 addendum report filed by the Department stated the paternity test results confirmed father was the biological father of the minor. The Department contacted father on April 22, 2019, to inform him of the paternity results and inquire about any potential Indian ancestry. Father stated, " 'He [the minor] is mine and I want to raise him.' " Father reported he had Indian ancestry but was neither a member of, nor seeking membership in, any tribe. He also stated his grandparents "may have membership."

On May 1, 2019, the court appointed counsel for father and found him to be the biological father of the minor. The court asked father whether he had any Native American heritage. Father responded, "I don't know." When asked if he knew of any relatives who may have knowledge of potential Native American heritage, father replied, "No." The court then asked the paternal aunt, who was present in the courtroom, whether she had any knowledge of Native American heritage in the family. The paternal aunt replied, "It's believed that we do have; I don't have confirmation," adding that she did not know which tribe. The court ordered the Department to conduct further ICWA inquiry of father's relatives and continued the paternity hearing. That same day, father

4

filed a parental notification of Indian status writing "may have" on the line asking the name of a band of which he might be a member or eligible for membership.

The Department filed an addendum report on May 13, 2019, regarding the Department's ICWA inquiry of father and his relatives. The report stated the social worker contacted father on May 2, 2019, regarding potential Native American ancestry. Father provided his telephone number and the paternal aunt's telephone number and stated there were no relatives other than the paternal aunt who might have information regarding potential Indian heritage. That same day, the social worker contacted the paternal aunt, who reported she did not think any relative knew which tribe they were affiliated with and she did not think any member of her family was a member of a tribe.

The report also stated that, on May 6, 2019, the social worker contacted the paternal grandfather, who reported the paternal great-great-grandmother was part Navajo and the paternal great-great-great-grandfather was part Apache. The paternal grandfather reported that his family had not been involved with the reservation for generations, but he believed they had some relatives who used to live on, or were currently living on, reservations in Colorado and other states. The paternal grandfather said he would attempt to contact some relatives to gather more information. When the social worker later contacted the paternal grandfather and requested the relatives' contact information so that the social worker could contact them directly, the paternal grandfather refused to provide that information.

At the continued paternity hearing on May 15, 2019, the court acknowledged receipt of the May 13, 2019 addendum report and ordered as follows: "The Department needs to contact the [BIA] and the State Department of Social Services. The Department also needs to contact the tribes, and at a minimum that contact must include telephone, facsimile or electronic mail contact to each tribe's designated agent. If the tribes fail to respond, the ICWA guidelines at page 22 requires multiple requests to the tribe." Father's counsel stated father wanted to confirm "that there is possible Apache and

5

Cherokee heritage," which father noted was "[o]ut of Colorado." The court recalled that the paternal grandfather reported the "family is part Navajo and part Apache" and asked father whether he wished to add any additional tribes to that list. Father responded, "Then, I guess, if that's my father's words then, I guess, you can go by that. That's fine." The Department and the court requested clarification from father as to whether he believed he may have Cherokee heritage. Father simply deferred to the statements of his family members. Given father's earlier statements, the court ordered the Department to include Cherokee tribes in its ICWA inquiry efforts. The court's written order stated as follows: "There is no reason to know the [minor] is an Indian child. However, based on information provided by the father, there is reason to believe the [minor] may be an Indian child. [The Department] shall therefore make further inquiry regarding the possible Indian status of the [minor]. Notice shall be provided as required by law, if there is a reason to know the [minor] is an Indian child."

The Department's June 2019 selection and implementation report recommended the court find the ICWA does not apply, terminate the parents' reunification services, and set the matter for a section 366.26 hearing.

In an addendum report filed June 6, 2019, the Department set forth its further ICWA inquiry efforts regarding the minor's potential Indian heritage. For example, on May 15, 2019, the social worker called the paternal grandfather, who stated he had not contacted any relatives but planned to speak to the paternal great-great-grandmother's sister that day and report back to the social worker. Two days later, the paternal grandfather reported he located the paternal great-great-grandmother's sister, who "knows many of the relatives in Colorado," and planned to see her the following day to obtain more information, including the birthdates of the paternal great-great-grandmother or great-great-great-grandfather, who was part of the Apache tribe in Sonora, Mexico.

In the meantime, the social worker contacted the California Department of Social Services (CDSS) Office of Tribal Affairs and the BIA and reviewed the BIA's list of

6

designated tribal agents to identify all Navajo, Apache, and Cherokee Tribes and their designated agents. The social worker contacted 12 identified tribes, four of which confirmed the minor was not an Indian child for purposes of the ICWA and the remainder of which had not responded as of the date of the report.

On June 17, 2019, father filed a petition pursuant to section 388 to change the court's May 15, 2019, order finding him to be the biological father of the minor and instead find him to be the minor's presumed father, vacate the selection and implementation hearing, and transition the minor to father's custody or, alternatively, to provide reunification services to father and set the matter for a six-month review hearing.

*Sections 388 and 366.26 Hearing*

On July 10, 2019, the court heard testimony on the issue of paternity and denied father's section 388 petition. The court terminated parental rights, finding there was "no reason to know that the [minor] is an Indian child" within the meaning of the ICWA and no further ICWA notice was required. Thereafter, the social worker testified that six additional tribes provided responses confirming the minor was not an Indian child and the remaining two tribes had not yet responded.[3]

Father timely appealed the court's July 10, 2019 orders.

## II. DISCUSSION

Father claims the juvenile court erred in finding the ICWA did not apply without first ensuring proper compliance with the ICWA inquiry and notification requirements.

---

[3] On January 10, 2020, the Department filed a motion to augment the record (Cal. Rules of Court, rules 8.155 & 8.410) with the following post-termination ICWA-related documents: a September 27, 2019 progress report (not file-stamped by the juvenile court), a September 27, 2019 declaration of receipt of ICWA return receipt cards and/or tribal correspondence, and the juvenile court's minute order following an October 18, 2019 ICWA compliance hearing wherein the court reiterated its previous ICWA ruling. The motion is hereby denied.

*Development of ICWA Compliance Law*

In 1978, Congress enacted the ICWA in response to " 'rising concern in the mid-1970's over the consequences to Indian children, Indian families, and Indian tribes of abusive child welfare practices that resulted in the separation of large numbers of Indian children from their families and tribes through adoption or foster care placement, usually in non-Indian homes.' [Citation.]" (*In re Isaiah W.* (2016) 1 Cal.5th 1, 7-8.) The purpose underlying the ICWA was " 'to protect the best interests of Indian children and to promote the stability and security of Indian tribes and families by the establishment of minimum Federal standards for the removal of Indian children from their families and the placement of such children in foster or adoptive homes which will reflect the unique values of Indian culture . . . .' (25 U.S.C. § 1902.)" (*Id.* at p. 8.)

"In 2006, our Legislature enacted provisions that affirm ICWA's purposes (§ 224, subd. (a)) and mandate compliance with ICWA '[i]n all Indian child custody proceedings' (§ 224, subd. (b))." (*In re Isaiah W., supra*, 1 Cal.5th at p. 9.)

The ICWA notice requirements have long been triggered by a court's "reason to know" a child may be an Indian child for purposes of the ICWA. (See 25 U.S.C. § 1912(a).) Although initially undefined under federal law, the phrase "reason to know" was defined by the California Legislature to include information provided by "a person having an interest in the child . . . *suggesting* the child is a member of a tribe or eligible for membership in a tribe" or "one or more of the child's biological parents, grandparents, or great-grandparents are or were a member of a tribe." (Former § 224.3, subd. (b)(1), italics added; Stats. 2006, ch. 838, § 32 (SB 678).) As demonstrated by case law at that time, little more than a "minimal showing" was required to trigger the statutory notice provisions. (See *Dwayne P. v. Superior Court* (2002) 103 Cal.App.4th 247, 258.)

Federal regulations governing court proceedings covered by the ICWA were amended, effective December 12, 2016, to provide minimum Federal standards to ensure

8

compliance with the ICWA. (25 C.F.R. § 23.101, et seq.) As relevant here, the federal regulations require that state courts, at the commencement of the involuntary child-custody proceeding, ask each participant "whether the participant *knows or has reason to know* that the child is an Indian child" and "instruct the parties to inform the court if they subsequently receive information that provides *reason to know* the child is an Indian child." (25 C.F.R. § 23.107(a), italics added.)

The regulations explain that a court "has *reason to know* that a child involved in . . . [a] child-custody proceeding is an Indian child" under certain specified circumstances (25 C.F.R. § 23.107(c)(1)-(6), italics added), and further explain that, "[i]f there is reason to know the child is an Indian child, but the court does not have sufficient evidence to determine that the child is or is not an 'Indian child,' the court must: [¶] (1) Confirm, by way of a report, declaration, or testimony included in the record that the agency or other party used due diligence to identify and work with all of the Tribes of which there is *reason to know* the child may be a member (or eligible for membership), to verify whether the child is in fact a member (or a biological parent is a member and the child is eligible for membership); and [¶] (2) [t]reat the child as an Indian child, unless and until it is determined on the record that the child does not meet the definition of an 'Indian child' in this part." (25 C.F.R. § 23.107(b)(1)-(2), italics added.)

Effective January 1, 2019, California Assembly Bill No. 3176 (2017-2018 Reg. Sess.) made substantial revisions to the Welfare and Institutions Code to conform California law to the requirements of the federal regulations governing proceedings covered by the ICWA. For example, section 224.2, subdivision (c) mirrors 25 C.F.R. § 23.107(a) and provides: "At the first appearance in court of each party, the court shall ask each participant present in the hearing whether the participant *knows or has reason to know* that the child is an Indian child. The court shall instruct the parties to inform the court if they subsequently receive information that provides reason to know the child is an Indian child." (§ 224.2, subd. (c), italics added; see 25 C.F.R. § 23.107(a).)

9

Section 224.2, subdivision (d) mirrors 25 C.F.R. § 23.107(c) and provides the court has "reason to know" a child involved in a proceeding is an Indian child under any of the following circumstances:  "(1) A person having an interest in the child, including the child, an officer of the court, a tribe, an Indian organization, a public or private agency, or a member of the child's extended family informs the court that the child is an Indian child; [¶] (2) The residence or domicile of the child, the child's parents, or Indian custodian is on a reservation or in an Alaska Native village; [¶] (3) Any participant in the proceeding, officer of the court, Indian tribe, Indian organization, or agency informs the court that it has discovered information indicating that the child is an Indian child; [¶] (4) The child who is the subject of the proceeding gives the court reason to know that the child is an Indian child; [¶] (5) The court is informed that the child is or has been a ward of a tribal court; [¶] (6) The court is informed that either parent or the child possess an identification card indicating membership or citizenship in an Indian tribe."  (§ 224.2, subd. (d); see 25 C.F.R. § 23.107(c).)

Section 224.2, subdivision (g) similarly mirrors 25 C.F.R. § 23.107(b) by providing:  "If there is *reason to know* the child *is an Indian child*, but the court does not have sufficient evidence to determine that the child is or is not an Indian child, the court shall confirm, by way of a report, declaration, or testimony included in the record that the agency or other party used due diligence to identify and work with all of the tribes of which there is reason to know the child may be a member, or eligible for membership, to verify whether the child is in fact a member or whether a biological parent is a member and the child is eligible for membership."  (Italics added.)

In contrast to the "reason to know" requirements, California law also sets forth requirements when there is a "reason to believe" a child is an Indian child.  Section 224.2, subdivision (e) provides:  "If the court, social worker, or probation officer has *reason to believe* that an Indian child is involved in a proceeding, the court, social worker, or probation officer shall make further inquiry regarding the possible Indian

10

status of the child, and shall make that inquiry as soon as practicable. Further inquiry includes, but is not limited to, all of the following: [¶] (1) Interviewing the parents, Indian custodian, and extended family members to gather the information required in paragraph (5) of subdivision (a) of Section 224.3[;**4**] [¶] (2) Contacting the Bureau of Indian Affairs and the State Department of Social Services for assistance in identifying the names and contact information of the tribes in which the child may be a member, or eligible for membership in, and contacting the tribes and any other person that may reasonably be expected to have information regarding the child's membership status or eligibility[;] [¶] (3) Contacting the tribe or tribes and any other person that may reasonably be expected to have information regarding the child's membership, citizenship status, or eligibility. Contact with a tribe shall, at a minimum, include telephone, facsimile, or electronic mail contact to each tribe's designated agent for receipt of notices under the federal Indian Child Welfare Act of 1978 (25 U.S.C. Sec. 1901 et seq.). Contact with a tribe shall include sharing information identified by the tribe as necessary for the tribe to make a membership or eligibility determination, as well as information on the current status of the child and the case." (§ 224.2, subd. (e)(1)-(3), italics added.)

*Analysis*

The newly-revised California laws made effective on January 1, 2019, apply to father, who made his first appearance in the proceedings on March 27, 2019. Father was found to be the minor's biological father on May 1, 2019. From that point until the court terminated his parental rights on July 10, 2019, the only ICWA information father provided was that he may have Indian ancestry but was neither a member of a tribe nor

---

**4** Section 224.3, subdivision (a)(5) includes the name, birth date and birthplace of the Indian child, if known; the name of the Indian tribe; and the names and other identifying information of the Indian child's biological parents, grandparents, and great-grandparents, if known.

could he identify a tribe, his grandparents "may have membership," there was "possible Apache and Cherokee heritage" which was "[o]ut of Colorado," and that the paternal grandfather's claim that the family was part Navajo and part Apache was "fine." The paternal aunt reported possible but unconfirmed Indian heritage and stated she did not think any member of her family was a member of a tribe.

Based on the initial inquiry by the court and the Department, there was at best a *reason to believe* the minor may be an Indian child, thus triggering the provisions of section 224.2, subdivision (e), which required the court and the Department to make further inquiry as soon as practicable. The Department conducted further inquiry of father and his extended family members. The paternal grandfather—the only family member with any information—reported the paternal great-great-grandmother was part Navajo and the paternal great-great-great-grandfather was part of the Apache Tribe in Sonora, Mexico; the paternal family had not been involved with the reservation for generations; and he believed some of the paternal family members used to live on, or were currently living on, reservations in Colorado and other states. He also reported he was in contact with the paternal great-great-grandmother's sister, who knew many of the Colorado relatives, but refused to provide the relatives' contact information to the Department.

With that limited information, and at the direction of the juvenile court, the Department contacted the CDSS and the BIA to obtain assistance in identifying the designated tribal agents for all federally-recognized Navajo, Apache, and Cherokee tribes. The Department reported, in a June 12, 2019 addendum report, that the social worker identified 12 federally-recognized tribes: the Navajo Nation, the Cherokee Nation, the Eastern Band of Cherokee Indians, the United Keetoowah Band of Cherokee Indians in Oklahoma, the Apache Tribe of Oklahoma (Kiowa), the Fort Sill Apache Tribe of Oklahoma, the Jicarilla Apache Nation, the Mescalero Apache Tribe, the San Carlos Apache Tribe, the Tonto Apache Tribe of Arizona, the White Mountain Apache Tribe,

and the Yavapai-Apache Nation. The report documented the social worker's contact with the 12 tribes by telephone, fax, e-mail, and/or mail, the name of the designated agent for each tribe, the dates of attempted contact with each designated agent (all between May 15 and June 4, 2019), and that each tribe was provided with the minor's "ICWA Family Tree." As of the date of the report, four of the tribes had confirmed the minor was not an Indian child. As of the July 10, 2019 hearing, six additional tribes had confirmed the minor was not an Indian child, and the two remaining tribes (the Navajo Nation and the White Mountain Apache Tribe) had acknowledged contact but had not yet provided a definitive response.

Based on the documentation provided by the Department, the juvenile court found the Department complied with the ICWA notice provisions, there was "no reason to know that the [minor] is an Indian child" within the meaning of the ICWA, and no further ICWA notice was required.

The Department's ICWA inquiry based on *reason to believe* the minor might be an Indian child met the requirements set forth in section 224.2, subdivision (e). Therefore, there was sufficient evidence to support the juvenile court's finding that there was no reason to know the minor was an Indian child and no further ICWA noticing was required.

Father contends the Department's ICWA declaration upon which the court relied failed to include information required by section 224.2, subdivision (e)(3), including contact information for the tribal agents with whom the Department made contact, the minor's "ICWA Family Tree" mentioned in the declaration, information regarding the minor's current status, return receipts from the Navajo Nation or the White Mountain Apache Tribe, and the actual responses from the tribes. He also takes issue with the fact that the ICWA declaration was not signed under penalty of perjury. The claims lack merit.

As a preliminary matter, section 224.2, subdivision (e) does not require that any extensive or particular formal documentation of ICWA inquiry be provided to the tribe. Subdivision (e)(3) of that section provides that contact with the tribe "shall include sharing information *identified by the tribe as necessary* for the tribe to make a membership or eligibility determination." (Italics added.) Similarly, section 224.2, subdivision (e) does not require that the Department report its inquiry efforts to the juvenile court in the form of a declaration or in any particular form at all. The only guidance in that regard can be found by analogy to subdivision (g) of that section (applying specifically to circumstances where there is "reason to know") which permits the court to confirm the Department's due diligence "by way of a report, declaration, or testimony included in the record." (§ 224.2, subd. (g).) Here, the Department provided evidence of its due diligence inquiry via a report and testimony at the July 10, 2019 hearing. Thus, father's claim that the "declaration" was not signed under penalty of perjury fails.

In any event, the Department's ICWA report contained evidence sufficient to support the juvenile court's findings. Section 224.2, subdivision (e)(3) requires that further inquiry include: "Contacting the tribe or tribes and any other person that may reasonably be expected to have information regarding the child's membership, citizenship status, or eligibility. Contact with a tribe shall, at a minimum, include telephone, facsimile, or electronic mail contact to each tribe's designated agent for receipt of notices under the federal Indian Child Welfare Act of 1978 (25 U.S.C. Sec. 1901 et seq.). Contact with a tribe shall include sharing information identified by the tribe as necessary for the tribe to make a membership or eligibility determination, as well as information on the current status of the child and the case."

The Department's report included evidence of interviews of father and his extended family members, contact with the BIA and CDSS to identify any federally-recognized Navajo, Apache, and Cherokee tribes in which the minor might be a member

14

or eligible for membership and, as required by subdivision (e)(3), contact with the identified tribes (by telephone, facsimile, e-mail, and regular mail) and sharing of information via the minor's ICWA family tree. (See § 224.2, subd. (e)(1)-(3).) It also included information regarding the tribes' responses, or lack thereof. In that regard, at the time of the juvenile court's July 10, 2019 ruling, 10 of the 12 tribes confirmed the minor was not an Indian child. As for the two remaining tribes, the Department reported it contacted the Navajo Nation on May 15 and 22, 2019, and June 4, 2019, spoke with a tribal representative by telephone, and faxed the ICWA inquiry twice but had yet to receive a determinative response. The Department further reported it contacted the White Mountain Apache Tribe on May 23 and 28, 2019, communicated by e-mail, and e-mailed and mailed the ICWA inquiry but had yet to receive a determinative response. Based thereon, the two tribes were given nearly two months within which to provide a determinative response to the Department's ICWA inquiry, a time period we find reasonable in the context of a dependency proceeding.

Father claims the juvenile court "knew or had reason to believe" the minor was an Indian child within the meaning of the ICWA based on information provided by father and the paternal grandfather, and the Department failed to send notices to the Navajo, Apache, and Cherokee Tribes as required. In the absence of such noticing, he argues, the court's conclusion that the minor was not an Indian child was error. We disagree.

Father conflates two separate and distinct provisions of section 224.2, namely the "reason to know" provisions found in section 224.2, subdivisions (c), (d), (f), (g), and (i) and the "reason to believe" provision found in section 224.2, subdivision (e). As discussed at length above, a "reason to believe" the minor is an Indian child triggers requirements less rigorous than does a "reason to know."

Here, the entirety of the information provided by father and the paternal grandfather was that father's family had possible Cherokee heritage and possible Navajo and Apache heritage linked to the paternal great-great-grandmother and the paternal

15

great-great-great-grandfather. The information did not meet the "reason to know" criteria set forth in section 224.2, subdivision (d). That is, no person having an interest in the minor (including the minor himself) had informed the court that the minor was an Indian child, there was no information to suggest the minor had at any time lived on a reservation or been a ward of a tribal court, and there was no indication either the minor or the parents possessed an identification card indicating membership or citizenship in an Indian tribe. The information provided by father and the paternal grandfather indicated the possibility that they had Indian heritage but did not rise to the level of "information indicating that the [minor] is an Indian child." (§ 224.2, subd. (d)(3).)

At best, the information provided by father and the paternal grandfather gave the court a "reason to believe" the minor may be an Indian child, thus triggering the inquiry provisions of section 224.2, subdivision (e). The court established that fact at the May 15, 2019 hearing, during which the court first ordered the Department to contact the BIA and the CDSS, and contact the tribes by, at a minimum, telephone, facsimile, or electronic mail, as required by section 224.2, subdivision (e). Then, when father suggested there might be Cherokee heritage in addition to the previously-claimed Navajo and Apache heritage, the court ordered the Department to include Cherokee tribes in its ICWA inquiry. The court's May 15, 2019 written order expressly stated there was "*no reason to know* the [minor] is an Indian child" (italics added) but, based on the new information provided by father, there was a "reason to believe the [minor] may be an Indian child." The order directed the Department to make further ICWA inquiry and provide notice "*if there is a reason to know* the [minor] is an Indian child." (Italics added.) As the court later determined, there was no reason to know.

Father relies on a number of cases which he claims support his argument that ICWA notice to the tribes was "mandatory." All but one of the cases upon which he relies—*In re A.W.* (2019) 38 Cal.App.5th 655—predate the 2019 amendments to the California statutes distinguishing between "reason to believe" and "reason to know." In

16

*A.W.*, the parents argued the agency and the juvenile court failed to comply with the ICWA procedures and erroneously terminated their parental rights without prior notice to the relevant Indian tribe. (*Id.* at p. 663.) This court rejected the agency's argument that the newly-revised language of section 224.2 required notice "only when the court knows or has reason to know the child *is definitively* a member (or knows a parent *is definitively* a member *and* the child is eligible for membership)." (*A.W.*, at p. 665.) In doing so, this court applied the 2016 law in effect at the time the juvenile court conducted its ICWA compliance hearing and did not analyze the issue under the 2019 revised statute applicable here. (*Id.* at p. 662.) *A.W.* is inapposite here.

The Department satisfied the criteria set forth in section 224.2, subdivision (e) and the juvenile court's finding that, based on the evidence provided, there was no reason to know the minor was an Indian child and no further noticing was required, and its determination that the ICWA did not apply were supported by substantial evidence.

## III. DISPOSITION

The juvenile court's orders are affirmed.

/S/

_____
RENNER, J.

We concur:

/S/

_____
BUTZ, Acting P. J.

/S/

_____
MURRAY, J.

Filed 6/5/20

<u>CERTIFIED</u> <u>FOR</u> <u>PUBLICATION</u>

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| In re M.W., a Person Coming Under the Juvenile Court Law. | C089997 |
| SACRAMENTO COUNTY DEPARTMENT OF CHILD, FAMILY, AND ADULT SERVICES, | (Super. Ct. No. JD239507) |
| Plaintiff and Respondent, | ORDER CERTIFYING OPINION FOR PUBLICATION |
| v. | |
| A.C., | [NO CHANGE IN JUDGMENT] |
| Defendant and Appellant. | |

THE COURT:

The opinion in the above-entitled matter filed May 7, 2020, was not certified for publication in the Official Reports. For good cause it appears now that the opinion should be published in the Official Reports and it is so ordered. There is no change in judgment.

1

# EDITORIAL LISTING

APPEAL from a judgment of the Superior Court of Sacramento County, Shama H. Mesiwala, Judge. Affirmed.

Patricia K. Saucier, under appointment by the Court of Appeal, for Defendant and Appellant.

Lisa A. Travis, County Counsel, Nicole L. Roman, Deputy County Counsel, for Plaintiff and Respondent.

BY THE COURT:

/S/

_____

BUTZ, Acting P. J.

/S/

_____

MURRAY, J.

/S/

_____

RENNER, J.